### The Nonotuck Silk Company, Defendant in Error, v. Nicholas J. Pritzker, Plaintiff in Error.

### Gen. No. 13,974.

1. STATUTE OF LIMITATIONS—*what does not toll running of.* The running of the Statute of Limitations against an open account is not tolled by the mere filing of a petition in bankruptcy.

2. STATUTE OF LIMITATIONS—*what not new promise.* The statement of a debt due to a creditor made by the debtor in a petition filed for a discharge in bankruptcy, is not such a promise as will start afresh the running of the Statute of Limitations in favor of such creditor.

3. BANKRUPTCY ACT—*rights of creditor to institute action.* The filing of a petition in bankruptcy does not prevent a creditor of the bankrupt from instituting action upon his claim.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. JUDSON F. GOING, Judge, presiding. Heard in this court at the October term, 1908. Reversed and judgment here. Opinion filed October 8, 1908.

AARON HEIMS, for plaintiff in error.

The incorporation of a debt in a schedule filed with the petition in bankruptcy, is not such an acknowledgment as will prevent the running of the Statute of Limitations against it. 3 Elliott Ev., sec. 2466; 19 Am. & Eng. Encyc. Law (2nd ed.), 302-3; 25 Cyc. 1344-5; *In re* Hardin, 1 Hask. 163; S. C. 11 Fed. Cas. No. 6048, p. 488; George Ins. Co. v. Ellicott, Taney 130; S. C. 10, Fed. Cas., No. 5354; Christy v. Flemington, 10 Pa. St. 129; Hidden v. Cozzens, 2 R. I. 401; Roscoe v. Hale, 7 Gray 274; Stoddard v. Doane, 7 Gray 387; Richardson v. Thomas, 13 Gray 381.

The pendency of proceedings in bankruptcy does not operate to prevent the institution of suit by a creditor for the recovery of a judgment, and does not suspend the operation of the Statute of Limitations. Doe v. Erwin, 134 Mass. 90; Milne's Appeal, 99 Pa. St. 483; Davidson v. Fisher, 41 Minn. 363; Cleveland v. Johnson, 26 N. Y. Supp. 734; *In re* McBryde, 99 Fed. Rep. 686; Lauderdale v. Mahon, 41 S. C. 97; Thompson v. Massie, 41 S. C. 97; Rosenthal v. Nove, 175 Mass. 559; *In re* Eastern Commission & Importing Co., 129 Fed. Rep. 847.

The Statute of Limitations is a statute of repose and not of presumption; in order to take a debt out of the operation of the statute, there must not only be an admission of a present subsisting debt, but also an express promise to pay or circumstances from which an implied promise may fairly be presumed. Kallenbach v. Dickinson, 100 Ill. 427, at pp. 433-435; Boone v. Ahern, 98 Ill. App. 610, at p. 613; Hahn v. Gates, 102 *id.* 385; *In re* Hardin, *supra;* Bell v. Morrison, 1 Pet. 351; Moore v. Bank of Columbia, 6 Pet. 86.

WHITMAN & HORNER, for defendant in error.

A petition and schedule in bankruptcy starts the running of the Statute of Limitations anew, as to each debt thereon enumerated. Bowie v. Henderson, 6 Wheat. 514; Bryar v. Willcocks, 3 Cow. 159; Stuart v. Foster, 18 Abb. Pr. 305; 28 How. Pr. 273; *In re* Eldridge, 2 Hughes 256; 8 Fed. Cas. 414; Sartor v. Beaty, 25 S. C. 293; Lauderdale v. Mahon, 41 S. C. 97; *In re* Gibson, 69 S. W. Rep. 974.

A petition and schedule in bankruptcy is a sufficient admission of a debt thereon acknowledged to be due and unpaid, as will under the law of Illinois raise an implied promise to pay such amounts, and bar the statute. Sartor v. Beaty, 25 S. C. 293; Lauderdale v. Mahon, 41 S. C. 97; Bowie v. Henderson, 6 Wheat. 514; Coulson v. Hartz, 47 Ill. App. 20.

An unconditional admission of the justice of the debt is sufficient to remove the bar of the statute. Parsons v. Northern Illinois Coal & Iron Co., 38 Ill. 430-434; Freeman v. Walker, 67 Ill. App. 309-314; Tridell v. Munhall, 124 Fed. 802-804.

The filing of the petition in bankruptcy suspends the running of the Statute of Limitations during the pendency of the bankruptcy proceedings. Hall v. Greenbaum, 33 Fed. 22; Luddington v. Thompson, 153 N. Y. 499; Brooks v. Bates, 7 Colo. 576; Greenwald v. Appell, 17 Fed. 140; In re McKinney, 15 Fed. 912; Bank v. Bossieux, 3 Fed. 817; In re Leiman's Estate, 32 Md. 225; Hignutt v. Gary, 62 Md. 190; Van Sachs v. Kretz, 72 N. Y. 548; In re Maybin, 16 Fed. Cas. 1221.

Sec. 11, a, b, of Bankruptcy Act of 1898, applies only to cases *pending* at the commencement of bankruptcy proceedings. In re Claiborne, 109 Fed. 74.

All creditors are considered parties to the bankruptcy proceedings. Brandenberg on Bankruptcy (2nd ed.) 174.

MR. JUSTICE BROWN delivered the opinion of the court.

This writ of error is to reverse a judgment of the Municipal Court of Chicago in a suit of the fourth class, tried therefore without written pleadings, except a bill of particulars. That bill alleges that the plaintiff's claim was for goods and merchandise sold and delivered from May 7, 1900, to June 30, 1900.

The case was tried by the court without a jury, and resulted in the judgment for the defendant in error, the plaintiff below, against the plaintiff in error, the defendant below, for $841.89, which it is here sought to reverse. The suit was begun on July 3, 1907, and the defense was that the claim was barred by the Statute of Limitations, which provides that such an action must be commenced within five years from the time it accrues.

The evidence, varying slightly from the bill of particulars, showed that the defendant bought goods from the plaintiff in 1901 and before, and owed it for the same on an open account, the last item of which was of the date of March 2, 1901. This was more than five years before the commencement of the action. To take the case out of the operation of the statute the plaintiff introduced in evidence a petition in bankruptcy and bankruptcy schedules attached, all in the handwriting of the defendant and sworn to by him and filed in the District Court of the United States for the Northern District of Michigan, March 7, 1904.

The petition stated in the usual form that the petitioner owed debts which he was unable to pay in full; that he was willing to surrender all his property except such as was exempt by law, and desired to obtain the benefits of the Bankruptcy Act; also that the Schedule A annexed contained a full and true statement of all his debts. The petition prayed that he might be adjudged by the court to be a bankrupt.

Schedule A contained, among other listed debts which aggregated $4,172.22, the following:

| Reference to ledger or voucher. | Name of creditor. | Residence. | When and where contracted. | Nature etc. | Am't. |
|---|---|---|---|---|---|
| 26 | The Nonotuck Silk Co. | 268 Franklin Street, Chicago. | Chicago, 1897. | Open account. | $841.89. |

The defendant stated in his testimony in the present case, however, "that he was not sure that the date of 1897 as the date the bills were contracted was correct, but that he put 1897 as approximate."

On this petition the defendant was adjudged a bankrupt on March 10, 1904, after which no proceedings were taken in the case, which has never been dismissed. The petitioner never petitioned for his discharge, nor was any discharge in bankruptcy ever entered. The schedules showed only $324 of assets, all of which were claimed by the petitioner as exempt.

The question presented in the case at bar, which is whether this sworn bankruptcy petition and schedule of the defendant had the effect so to avoid or suspend the operation of the Statute of Limitations that the debt was not barred on July 3, 1907, which was more than five years from the date of the last entry in the open account, and less than five years from the filing of the petition and schedules, is, although simple, not free from difficulty.

The first contention of the plaintiff is that the filing of the petition in bankruptcy suspended the running of the Statute of Limitations. It claims that as the period of time from the date of the last item in the defendant's open account with it up to the date of the commencement of the suit at bar, after deducting the period following the filing of his petition within which the defendant might have secured his discharge, is less than the required period for the running of the Statute of Limitations, the suit for this reason is not barred.

We do not think this contention can be sustained. The plaintiff bases it on the language of the limitation statute of Illinois: "When the commencement of an action is stayed by injunction, order of a judge or court or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the actions."

It is claimed that the proper construction of the National Bankruptcy Act makes the present case fall within this provision, and that there is in the National Bankruptcy Act "a statutory prohibition" of the maintenance of a suit during the pendency of the bankruptcy proceedings at least until an unreasonable delay has taken place in asking for and procuring a discharge. But there does not appear that there is any such prohibition against beginning or maintaining a suit in the Bankruptcy Act of 1898. There was one in the Act of 1867, which applied only, however,

to creditors proving their debts or claims in bankruptcy. Holland v. Martin, 123 Mass. 278; Doe v. Erwin, 134 Mass. 90. That Act provided that a creditor proving his debt "should not be allowed to maintain any suit at law or in equity therefor against the bankrupt." The cases cited by the plaintiff which arose under that law are not applicable under the present act, for that has omitted any provision which can be properly construed to forbid the bringing of a suit after the bankruptcy proceedings are begun. It is provided by section 11, a, that a suit pending at the time the petition is filed shall be stayed until after an adjudication or dismissal, and may be further stayed until twelve months after the adjudication, or until a pending application for discharge is determined. But this refers only to suits pending when the petition is filed (*In re* Claiborne, 109 Fed. Rep. 74), and we cannot assent to the theory of the plaintiff, that by recognizing certain rights of the plaintiff in pending suits, the statute prohibits the bringing of other suits. Such an implication is altogether too wide. But in any event, even were the provision of the law of 1867 in force and the reasoning in the case of Hall v. Greenbaum, 33 Fed. Rep. 22, and that in the other cases cited by the plaintiff therefore applicable, we cannot see how it would affect the present case, for there is no evidence in this case that the plaintiff ever proved its debt in the bankruptcy proceedings.

It is conceded, however, that under the provisions of sec. 2, clause 15, of the Act of 1898, the District Court of the United States can stay the prosecution of suits begun after the petition is filed, and as we understand the plaintiff's argument, it insists that this power to stay the suit is equivalent to an "injunction or order of court" staying it. This plainly is not sound, nor would the staying of the *prosecution* of a suit be equivalent to "staying the commencement of a suit." Bringing the suit within the period of limitation would have suspended the operation of the stat-

ute; that it might have been stayed after it was commenced does not excuse the plaintiff from so instituting it, and it should have followed the course which the court commended in *In re* McBryde, 99 Fed. Rep. 686, that is, been "vigilant and unwilling to trust a theory when there was a way certain." The court in that case expresses a doubt whether the "theory" may not have been sound, but we cannot hold it so in this case.

We think it entirely within the discretion of the bankruptcy court to stay or refuse to stay the prosecution of an action against a bankrupt which was commenced after the filing of the petition (*In re* Knight, 125 F. R. 35; *In re* Remington Automobile & Motor Co., 119 F. R. 441; *In re* Porter, 109 F. R. 111), and that in the absence of such a stay by the Federal Court or the State Court, the action may proceed, and that in no event can the commencement of such an action, which will in itself save the bar of the statute, be prevented. Therefore this first contention of the plaintiff we must reject.

But greater stress is laid by him on a different proposition, namely, that the petition and schedule in bankruptcy was such an unconditional admission of the debt as to raise anew an implied promise to pay the debt, from the date of which implied new promise only, the period of limitation begins to run. Viewed in reason this would seem logically to depend in Illinois upon whether the running of the Statute of Limitations is stopped and a new departure is begun simply by the admission of a debt before it is barred, when that admission is not made directly to the creditor, and when it is made under circumstances that apparently negative the purpose of paying the debt in full, but show rather the purpose of escaping from it altogether.

The admission was certainly unconditional, but does the rule in Illinois require nothing but an unconditional admission to raise the implied promise neces-

sary to break the running of the statute? Proof of an express promise is not necessary, but a promise must be implied, and we do not think that Judge Harker's dissenting opinion in Coulson v. Hartz, 47 Ill. App. 20 (the case relied on so strongly by the plaintiff), means to state the law differently from that of the opinion of the court when he says, "I do not understand that a mere acknowledgment of the correctness of an account unaccompanied by a promise to pay is sufficient to take it out of the operation of the statute," for the opinion of the court, voiced by Mr. Justice Cartwright, says "that it seems to be the rule that an express promise to pay is not necessary, *but that an implied promise is a sufficient new promise to remove the bar of the statute.*" What the learned members of the Appellate Court for the Fourth District differed about was whether a balance in a running account struck by the debtor himself, within the period of limitation, in his own private account books, showing a certain sum due to the creditor, and showing it in the separate account devoted to that creditor, raised such an implied promise.

It may be held, we think, that such "an unqualified admission that the debt is due and unpaid, accompanied by nothing said or done to rebut the presumption of a promise to pay it," will imply such a promise without its following that the same implication can be made from an admission in a bankruptcy schedule where, as Judge Fox is reported (*In re* Hardin, 11 Federal Cases, No. 6048, p. 489) to have said, "Any intention to pay the liabilities is certainly the farthest thing possible to be inferred," * * * "On the contrary" the debtor "thereby says that he cannot pay and does not intend to pay or to have them remain as outstanding demands against them; instead of paying, he means and intends to be forever discharged therefrom."

That in Illinois the admission must be such that a promise may properly be implied from it, is the doc-

trine stated by the Supreme Court in Keener v. Crull, 19 Ill. 189, where the court says: ''The new promise may arise out of such facts as identify the debt which is the subject of the promise with such certainty as will clearly determine its character, fix the amount due, and show a present unqualified willingness and intention to pay it.''

And in Carroll v. Forsyth, 69 Ill. 127, where it says: ''The law, as recognized by this court, is that to remove the bar of the Statute of Limitations it is incumbent on the plaintiff to prove an express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay; it must be of such a character as to clearly show a recognition of the debt *and an intention to pay it.*''

To the same purport, as we read them, are Waldron v. Alexander, 136 Ill. 550; Kallenbach v. Dickinson, 100 Ill. 427; and Parsons v. Northern Illinois Coal & Iron Co., 38 Ill. 430. This court has said the same thing in Boone v. Ahern, 98 Ill. App. 610, and Hahn v. Gates, 102 Ill. App. 385.

Any expression of an intention to pay the debt in the present case seems conspicuously absent from the petition and schedules filed, and we do not think that logically and in reason any new promise to pay can be inferred from them.

If we turn from reasoning by analogy to searching for authority on the precise question involved, we find none of controlling authority. Our own courts do not seem to have had it before them. But there are conflicting decisions in other jurisdictions. Supporting the plaintiff's contention is a *dictum* lent weight by a great name. In Bowie v. Henderson, 6 Wheaton, 514, decided in 1821, Chief Justice Marshall says of a debtor's recording a debt, in taking the benefit of an insolvent act in the District of Columbia:

"It would have been sufficient evidence, if five years had not elapsed after recording, to have sustained an issue on a replication of a new promise to the plea of the Statute of Limitations." But he adds: "But more than five years having elapsed it could have no application to this case."

This dictum was quoted with approval by the court in *In re* Eldridge, 2 Hughes 256, in which the opinion of the learned judge says: "The effect of going into bankruptcy is to promise to pay all creditors *pro rata* to the extent of the assets, and to devote all assets to that purpose; in consideration of a discharge from further payment;" and as a corollary to this theory: "It seems that including a demand in a schedule of an insolvent's debt is evidence of a new promise, if within the period of limitation."

This also was *obiter dictum,* however, because the only question at issue in the case was whether the Statute of Limitations would run against a claim during the pendency of proceedings in bankruptcy *so that it could not be proved in the bankruptcy proceedings.* This was a question under the Bankruptcy Act and governed by its language, and is a very different question—as is pointed out in Richardson v. Shaw, 13 Gray 381—from the question whether the same Statute of Limitations "is a bar to the creditor suing the debtor in a common law action, upon the original cause of action."

The doctrine contended for by the plaintiff is, however, strictly involved in the cases of Bryar v. Wilcox, 3 Cowan, 159-164; Stuart v. Foster, 28 How. Pr. 273; Sartor v. Beaty, 25 South Carolina, 293; Lauderdale v. Mahon, 41 South Carolina, 97.

But the authority which may be cited on the other side of the question is at least of equal weight, and seems to us stronger logically and on principle.

Chief Justice Taney in the Georgia Insurance and Trust Co. v. Ellicott, Taney 130, 10 Fed. Cases, No. 5354, decided the other way, saying: "It appears

from the evidence that the claim of the plaintiff is barred by the Statute of Limitations unless the bar is removed by the subsequent admissions of the defendants. The admission relied on is contained in the papers, filed by them upon their application to the commissioners for the benefit of the Act, passed by the General Assembly of Maryland, for the relief of insolvent debtors. * * * There is no express promise in this case nor can the admission upon any just construction be held to imply that the defendants are willing or intend to pay the debt to its full extent; on the contrary the very object of the petition and the list of debts or other papers that accompany it, is to be discharged from this and other debts without paying the full amount; and if we were to construe this admission to imply a promise on their part to pay the whole claim and sufficient to authorize a verdict for the entire debt, we should expound it in direct contradiction to its obvious meaning. They make the admission in order to obtain a discharge without full payment, and to be released from so much of it as their property may be found insufficient to pay.''

Another great judge, Chief Justice Shaw of Massachusetts, in Richardson v. Thomas, 13 Gray, 381, before cited, says of the scheduling of a debt by a debtor in insolvency proceedings brought by his creditors: ''The court are of opinion that the statute bar is not avoided by the facts stated. * * * The defendants as insolvents, were bound by their duty and their oath to present the plaintiff's debt in their schedule as a debt due, and the fact was then strictly true; it was a debt due, not barred by the Statute of Limitations. * * * On what ground is it that the acknowledgment of a debt in the ordinary course of business or a payment takes the case out of the statute? Plainly because being done voluntarily by the debtor, each is a significant act on the part of the debtor admitting the debt to be due and his liability to pay it, from which the law implies a promise to do so. Can

such an inference be drawn from an acknowledgment which the debtor is bound by a legal requisition under a heavy penalty to make, and as a step in the course of a series of legal proceedings, which when rightly conducted is designed to lead as one of its appropriate objects to the discharge of that very debt?''

This reasoning is not so exactly applicable to the case at bar as it would be had the bankruptcy proceedings in the case of the defendant been involuntary, but it is of force, nevertheless, and we do not find in the difference of the Massachusetts doctrine concerning the Statute of Limitations from that of Illinois, as suggested by the plaintiff, anything that detracts from the persuasive authority of this case or of the other Massachusetts cases, Stoddard v. Doane, 7 Gray, 387; Roscoe v. Hall, 7 Gray, 274; and Doe v. Erwin, 134 Mass. 90; cited by the defendant.

In Rhode Island another eminent judge, Chief Justice Greene, in deciding the exact question involved here, where, as here, the proceeding was voluntary—Hidden v. Cozzens, 2 R. I. 401—said: ''A petitioner for the benefit of the insolvent law is required by that law to annex to his petition a true inventory of all his debts. This is not made with any view to payment of the debt, but on the contrary is annexed to and made a part of the petition in which the debtor under oath states he is unable to pay, and so far from being an acknowledgment of a subsisting debt, which the party is liable and willing to pay, the acknowledgment is made to protect him from process by the creditor to compel him to pay it. * * * We do not think the law will raise an implied promise to pay from such an acknowledgment.''

To the same purport is Christy v. Flemington, 10 Pa. St. 129.

On the whole we think the conclusion of the editors of The Cyclopedia of Law and Procedure ''A statement of a debt in the schedule of an insolvent is not such an acknowledgment as will take the case out of

the statute" (25 Cyc. 1344-5), and of those of the American & English Encyclopedia of Law: "It is held that the mere fact that the debtor includes the plaintiff's claim in the schedule of his debts in making an assignment for the benefit of his creditors or in his application for discharge in bankruptcy, or that his administrator schedules it in filing an inventory of outstanding claims as required by law, does not constitute such an acknowledgment as will imply a new promise, and thus defeat the operation of the Statute of Limitations" (19 American & English Encyclopedia of Law, 2nd edition, 302-3), are justified.

This being our opinion, we feel obliged to reverse the judgment of the Municipal Court and to find the issues for the defendant and enter a judgment here of *nil capiat* and for costs in his favor.

*Reversed and judgment here.*